**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Statesville Division)**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **CUSTOM DESIGN GROUP, LLC,** | ) | Case No. 20-50463 |
| | ) | |
| | ) | |
| Debtor. | ) | |

## FIRST AMENDED PLAN OF REORGANIZATION

Custom Design Group, LLC, the Debtor, submits this First Amended Plan of Reorganization (the "Plan") pursuant to Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*

## DISCLOSURES REQUIRED BY 11 U.S.C. § 1190

The Debtor operates a company specializing in the design and production of customized apparel, uniforms, sporting equipment, and promotional products. The Debtor shares common ownership with another limited liability company named CDG-Paw, LLC ("Paw"). In January 2020, the Debtor executed a guaranty and commercial security agreement to secure certain loans made by Peoples Bank to Paw. In November 2020, Paw defaulted on its loan obligations to Peoples Bank, and the bank made demand on the Debtor seeking an amount in excess of $700,000.00 arising from its guaranty of Paw's debts. The demand for the immediate payment of these guaranty liabilities rendered the Debtor unable to service its secured debts and caused the Debtor to file a bankruptcy petition under subchapter V of chapter 11 of the United States Code.

On the Petition Date, the Debtor had two members, Rich Stober ("Stober") and Pedie King ("King"). At all times relevant, the Debtor's day-to-day operations were managed by Stober until Stober sold his membership interest in the Debtor to King in March of 2021, whereupon King assumed control of the Debtor's day-to-day operations. King's is in the process of forming a new company ("Newco") to purchase the Debtor's assets, thereby providing a clean break and clear transition from an enterprise managed by Stober to the new enterprise managed by King.

Through this Plan, the Debtor intends to transfer all of its assets to Newco free and clear of all liens, claims, interests, and encumbrances (with all such liens, claims, interests, and encumbrances transferring to the proceeds) pursuant to sections 1123(a)(5) and (b)(4) of the Bankruptcy Code upon the following general terms:

- Newco will pay the Debtor the aggregate amount of $912,089.59 on or within 30 days of the Effective Date of this Plan, to be distributed to Creditors as follows—

       ○   $809,918.59 to Peoples Bank in full satisfaction of Peoples Bank's claims (Loan Nos. 9641, 7005 and 7180), and its interests in, to, and against property of the Estate, and

       ○   the remaining $102,171.00 to the Estate to be distributed to Creditors as set forth in this Plan or as otherwise ordered by the Court; and

- the Debtor will continue to operate in the ordinary course of business during the confirmation process and will cease operations on the Effective Date.

As shown in the attached Liquidation Analysis (Exhibit A), the Plan will result in payments to creditors in an amount greater than the same creditors would receive under Chapter 7 of the Bankruptcy Code. You should consult your attorney, accountant, or financial advisor if you have any questions about the Liquidation Analysis.

As shown in the attached Financial Projections (Exhibit B), the Plan will result in payments to creditors in an amount greater than the same creditors would receive through a payment plan based on the Debtor's operating revenues. You should consult your attorney, accountant, or financial advisor if you have any questions about the Financial Projections.

## ARTICLE I

## DEFINITIONS

As used in this chapter 11 plan, the following terms shall have the respective meanings specified below:

1.1    <u>Administrative Claim</u>.  Any cost or expense of administration of the Chapter 11 Case (a) required to be asserted by filing an application with the Bankruptcy Court on or before the Administrative Bar Date, or (b) Allowed under section 503(b) of the Bankruptcy Code, except to the extent the holder of such Claim agrees to be treated differently. Administrative Claims include, but are not limited to, (i) any actual and necessary expenses of preserving the Estate incurred during the Chapter 11 Case, (ii) any actual and necessary expenses of operating the Debtor's business incurred during the Chapter 11 Case, (iii) any indebtedness or obligations incurred or assumed by the Debtor in connection with the conduct of its business as a debtor in possession, or for the acquisition or lease of property by, or for the rendition of services to, the Debtor as debtor in possession, (iv) obligations pursuant to executory contracts assumed by the Debtor pursuant to an order of the Bankruptcy Court, (v) all Claims as provided by section 507(b) of the Bankruptcy Code, (vi) all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court, including any funds owed to the Trustee, (vii) any Allowed Contingent Claims which are granted administrative priority status by Final Order of the Bankruptcy Court, (viii) all fees payable and unpaid under section 1930 of Title 28, United States Code, and (ix) any fees or charges assessed against the Estate under chapter 123 of Title 28, United States Code.

1.2    <u>Administrative Claims Bar Date</u>.  The date thirty (30) days after the Confirmation Date or such other date(s), if any, as determined by order of the Bankruptcy Court, by which all

requests for allowance of Administrative Claims must be filed with the Bankruptcy Court. The Administrative Claims Bar Date shall not apply to fees and expenses of Professionals or the Trustee.

1.3   <u>Allowed Administrative Claim</u>.  All or that portion of any Administrative Claim that is or has become an Allowed Claim.

1.4   <u>Allowed Claim</u>.  Any Claim against the Debtor (i) proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of claims against the Debtor or, if no proof of claim is filed, which has been or hereafter is listed by the Debtor in its Schedules, as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or (ii) in favor of any Person arising from a judgment against such Person in any Avoidance Action (if the effect of such judgment gives such Person an Allowed General Unsecured Claim), or (iii) any Claim as to which the Bankruptcy Court has entered a Final Order allowing the Claim. A Disputed Claim shall be an Allowed Claim if, and only to the extent that, a Final Order has been entered allowing such Disputed Claim. The term "Allowed," when used to modify a reference in this Plan to any Claim or class of Claims, shall mean a Claim (or any Claim in any such class) that is allowed (e.g., an Allowed Secured Claim is a Claim that has been Allowed to the extent of the value of any interest in property of the Estate securing such Claim), as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code. Unless otherwise specified in this Plan or in the Final Order of the Bankruptcy Court allowing such Claim, "Allowed Claim" shall not include interest on the amount of such Claim from and after the Petition Date.

1.5   <u>Assumed Agreement</u>.   The Debtor's unexpired leases and other executory contracts that are being assumed pursuant to the Plan.

1.6   <u>Avoidance Action</u>.  Any and all actions which a trustee, debtor in possession, or other appropriate party in interest may assert on behalf of the Estate under the Bankruptcy Code, including actions pursuant to sections 542, 543, 544, 545, 546, 547, 548, 549, 550, and/or 551 of the Bankruptcy Code.

1.7   <u>Avoidance Action Claims</u>.  Claims asserted by parties pursuant to sections 502(d) and/or 502(h) of the Bankruptcy Code in connection with any Avoidance Action(s) brought by the Debtor against such parties.

1.8   <u>Ballot</u>.  The document used in voting on the Plan that must be executed and delivered by holders of Claims entitled to vote on the Plan.

1.9   <u>Bankruptcy Administrator</u>.  The United States Bankruptcy Administrator for the Western District of North Carolina.

1.10   <u>Bankruptcy Code</u>.   The Bankruptcy Reform Act of 1978, as amended, and memorialized in Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*

1.11    <u>Bankruptcy Court</u>.  The United States Bankruptcy Court for the Western District of North Carolina.

1.12    <u>Bankruptcy Rules</u>.  The Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as applicable to the Chapter 11 Case.

1.13    <u>Business Day</u>.  Any day other than a Saturday, Sunday, or other day on which commercial banks in the State of North Carolina are authorized or required by law to close.

1.14    <u>Cash</u>.  Cash and readily marketable securities or instruments including, without limitation, readily marketable direct obligations of the United States of America or agencies or instrumentalities thereof, time certificates of deposit issued by any bank, and commercial paper.

1.15    <u>Cause of Action</u>.  Any right, claim, proof of claim, motion, objection, and/or other legal cause of action, including, but not limited to Avoidance Actions, which the Debtor and/or the Reorganized Debtor may pursue in any court of competent jurisdiction or other forum.

1.16    <u>Chapter 11 Case</u>.  The Chapter 11 bankruptcy case of Custom Design Group, LLC, (Case No. 20-50463), pending in the Bankruptcy Court.

1.17    <u>Claim</u>.  Any right to payment from the Estate or the Estate, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, and arising at any time before the Effective Date or relating to any event that occurred before the Effective Date; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Estate or the Estate, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and arising at any time before the Effective Date or relating to any event that occurred before the Effective Date.

1.18    <u>Class</u>.  Means a classification of Allowed Claims for the purposes of treatment and distributions under this Plan.

1.19    <u>Confirmation Date</u>.  The date upon which the Bankruptcy Court enters the Confirmation Order confirming this Plan.

1.20    <u>Confirmation Hearing</u>.  The hearing before the Bankruptcy Court to consider confirmation of this Plan.

1.21    <u>Confirmation Order</u>.  An order of the Bankruptcy Court confirming this Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

1.22    <u>Contingent Claim</u>.  A Claim that is either contingent or unliquidated on or immediately before the Confirmation Date.

1.23    <u>Creditor</u>.  Any Person that holds a Claim against the Estate.

1.24    <u>Debtor</u>.  Custom Design Group, LLC

1.25    Disputed Claim.  A Claim which is the subject of a timely objection interposed by the Debtor, if at such time such objection remains unresolved; provided, however, that the Bankruptcy Court may determine the amount of a Disputed Claim for purposes of allowance pursuant to section 502(c) of the Bankruptcy Code; provided, further, that the Debtor, in its sole discretion, may elect to treat the portion of a Disputed Claim, if any, that is not in dispute as an Allowed Claim, with the disputed portion remaining a Disputed Claim.

1.26    Effective Date.  The Business Day on which all of the conditions set forth in Article 10 of this Plan shall have been satisfied or waived, but no later than June 1, 2021.

1.27    Equity Interest.  Any interest in the Debtor represented by any class or series of capital stock or membership interests of the Debtor prior to the Petition Date, and any and all warrants, options, convertible, or exchangeable securities, subscriptions, rights (including any preemptive rights), appreciation rights, calls, or commitments of any character whatsoever relating to any such interest in the Debtor.

1.28    Estate.  The bankruptcy estate of the Debtor, including all interests in property that the Debtor holds.

1.29    Final Order.  An order that is no longer subject to appeal, certiorari proceeding or other proceeding for review or rehearing, and as to which no appeal, certiorari proceeding, or other proceeding for review or rehearing shall then be pending.

1.30    Financial Projections.  The forecast in the appendix to the Plan that projects the Debtor's ability to make the payments required by the Plan.

1.31    General Unsecured Claim.  Any Unsecured Claim, other than an Administrative Claim, an Other Priority Claim, a Priority Tax Claim, an Unsecured Claim of a Critical Vendor, the Unsecured Deficiency Claim of Peoples Bank, or an Unsecured Claim of an insider or affiliate provided for in Class 8. Subject to the provisions of this Plan, Allowed General Unsecured Claims may include, without limitation, Allowed Unsecured Deficiency Claims, and any Claim in favor of any Person arising from a judgment against such Person in any Avoidance Action (if the effect of such judgment gives such Person an Allowed General Unsecured Claim).

1.32    Interest.  Any right, claim, or entitlement arising out of or against an Equity Interest.

1.33    Judgment.  A judgment that is no longer subject to appeal, certiorari proceeding or other proceeding for review or rehearing, and as to which no appeal, certiorari proceeding, or other proceeding for review or rehearing shall then be pending.

1.34    Liquidation Analysis.  The forecast in the appendix to the Plan that projects the distributions to creditors should this case be converted to Chapter 7 of the Bankruptcy Code.

1.35    Other Priority Claims.  Any Claim to the extent entitled to priority in payment under sections 507(a)(2) through 507(a)(7) of the Bankruptcy Code.

1.36    Paw.  CDG-Paw, LLC.

1.37 <u>Person</u>. An individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, or a government, governmental unit or any subdivision thereof or any other entity.

1.38 <u>Petition Date</u>. December 11, 2020, the date the Chapter 11 Case was filed.

1.39 <u>Plan</u>. This Plan of Reorganization, as it may be from time to time modified, amended or supplemented, together with any exhibits thereto.

1.40 <u>Priority Non-Tax Claim</u>. Any Claim arising prior to the Petition Date entitled to priority in payment under Sections 507(a)(1)-(a)(7) of the Bankruptcy Code.

1.41 <u>Priority Tax Claim</u>. Any Claim arising prior to the Petition Date entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

1.42 <u>Pro Rata Share</u>. With respect to any Allowed Claim in any Class, the proportionate share that such Allowed Claim bears to the aggregate amount of all Claims, including Disputed Claims, in such Class, determined as of the Petition Date.

1.43 <u>Professional</u>. Any attorney, accountant, appraiser, auctioneer, or other professional person retained and employed by the Estate in the Chapter 11 Case in accordance with sections 327 and/or 328 of the Bankruptcy Code.

1.44 <u>Projected Disposable Income</u>. The Debtor's projected disposable income calculated as provided in 11 U.S.C. § 1191(d).

1.45 <u>Reorganized Debtor</u>. The Debtor, as reorganized and re-vested with all the assets of the Estate pursuant to this Plan.

1.46 <u>SBA</u>. The United States Small Business Administration.

1.47 <u>Schedules</u>. The Schedules of Assets and Liabilities, and any amendments thereto, filed by the Debtor in the Chapter 11 Case under section 521 of the Bankruptcy Code.

1.48 <u>Secured Claim</u>. A Claim to the extent of the value, of any interest in property of the Estate securing such Claim, as determined pursuant to section 506(a) or 1111(b) of the Bankruptcy Code. To the extent that the value of such interest is less than the amount of the Claim which has the benefit of such security, such Claim is an Unsecured Deficiency Claim unless, in any such case, the class of which such Claim is a part makes a valid and timely election under section 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured Claim to the extent allowed.

1.49 <u>Taxes</u>. All income, franchise, excise, sales, use, employment, withholding, property, payroll, and other taxes, assessments, and governmental charges, together with any interest, penalties, additions to tax, fines, and similar amounts relating thereto, imposed or collected by any federal, state, local, or foreign governmental authority.

1.50    _Trustee_.  Michael T. Bowers, Esq., who was appointed in the Bankruptcy Case pursuant to section 1183 of the Bankruptcy Code.

1.51    _Unsecured Claim_.  A Claim not secured by a charge against or interest in property in which the Estate has an interest, including any Unsecured Deficiency Claim, and any Claim arising at any time under Bankruptcy Rule 3002(c)(3).

1.52    _Unsecured Deficiency Claim_.  A Claim by a Creditor arising out of the same transaction as a Secured Claim to the extent that the value, as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code or by stipulation, of such Creditor's interest in property of the Estate securing such Claim is less than the amount of the Claim which has the benefit of such security as provided by section 506(a) of the Bankruptcy Code.

1.53    _Voting Deadline_.  The date set in an order of the Bankruptcy Court as the deadline for the return of Ballots accepting or rejecting the Plan.

1.54    _Other Definitions_.  Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in this Plan but that is defined in the Bankruptcy Code or Bankruptcy Rules shall have the meaning set forth therein. Wherever from the context it appears appropriate, each term stated in either of the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter. The words "herein," "hereof," "hereto," "hereunder," and others of similar inference refer to this Plan as a whole and not to any particular article, section, subsection, or clause contained in this Plan. The word "including" shall mean "including without limitation."

## ARTICLE 2
## PROVISIONS REGARDING ALLOWED ADMINISTRATIVE
## CLAIMS AND ALLOWED PRIORITY TAX CLAIMS

2.1    _**Administrative Claims and Priority Tax Claims are Not Classified in this Plan**_. Administrative Claims and Priority Tax Claims are not classified and are not entitled to vote to accept or reject the Plan. The treatment of and consideration to be received by holders of Allowed Administrative Claims and Allowed Priority Tax Claims pursuant to this Article 2 of the Plan shall be in full and complete satisfaction, settlement, release, and discharge of such Claims. The Debtor's obligations in respect of such Allowed Administrative and Priority Tax Claims shall be satisfied in accordance with the terms of this Plan.

2.2    _**Administrative Claims Bar Date**_.  Unless otherwise ordered by the Bankruptcy Court or set forth herein, requests for payment of Administrative Claims must be filed and served no later than thirty (30) days after the Confirmation Date. Any Person required to file and serve a request for payment of an Administrative Claim and who fails to timely file and serve such request, shall be forever barred, estopped, and enjoined from asserting such Claim or participating in distributions under the Plan on account thereof. The Administrative Claims Bar Date shall not apply to fees and expenses of Professionals or the Trustee.

2.3   ***Treatment of Administrative Claims***.  Except as provided herein or to the extent the holder of an Allowed Administrative Claim agrees otherwise, each holder of an Allowed Administrative Claim shall be paid, in respect of such Allowed Claim, the full amount thereof in Cash (or such other form as is agreed upon by any holder of an Allowed Administrative Claim) on (a) the Effective Date, or (b) the date on which such Claim becomes an Allowed Claim, except that Allowed Administrative Claims arising in the ordinary course of business shall, if due at a later date pursuant to its terms, be paid when otherwise due.

2.4   ***Treatment of Priority Tax Claims***.  Each holder of an Allowed Priority Tax Claim shall be paid the Allowed Amount of its Allowed Priority Tax Claim, at the option of the Reorganized Debtor: (a) in full, in Cash, on the Effective Date or as soon as practicable thereafter; or (b) upon such other terms as may be mutually agreed upon between such holder of an Allowed Priority Tax Claim and the Reorganized Debtor.

## ARTICLE 3
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

3.1   ***Class 1: Allowed Secured Tax Claims***

    3.1.1      *Classification.*

Class 1 consists of all Allowed Secured Tax Claims.

    3.1.2      *Treatment.*

These Claims, if any, shall be treated as secured obligations of the Reorganized Debtor. Each holder of an Allowed Secured Tax Claim shall be paid the Allowed Amount of its Allowed Secured Tax Claim, at the option of the Reorganized Debtor: (a) in full, in Cash, on the Effective Date or as soon as practicable thereafter; or (b) upon such other terms as may be mutually agreed upon between such holder of an Allowed Secured Claim and the Reorganized Debtor. Each holder of an Allowed Secured Tax claim shall retain its existing liens, which shall retain the same priority that existed on the Petition Date.

    3.1.3      *Impairment and Voting*

Class 1 is impaired by the Plan. The holders of Class 1 Claims are entitled to vote to accept or reject the Plan. For purposes of voting, each holder of a Secured Tax Claim shall be considered to be the sole member of a separate Class.

3.2   ***Class 2: Secured Claims of Peoples Bank***

    3.2.1      *Classification*

Class 2 consists of the Allowed Secured Claim of Peoples Bank arising from the Debtor's obligations pursuant to those promissory notes (Nos. 7005, 9641 and 7180) executed by the Debtor in favor of Peoples Bank and secured by the Debtor's inventory, chattel paper, accounts, and equipment.

3.2.2       *Treatment*

Class 2 Claims shall be treated as secured obligations of the Debtor in the aggregate principal amount of $809,918.59  Within 30 days of the Effective Date, either (i) King shall cause CDW-Paw, LLC to refinance Loans 9641, 7005, and 7180 with Peoples Bank on terms mutually agreeable to Peoples Bank and King; or (ii) Peoples  Bank will be paid an aggregate amount of $809,918.59 (principal and interest through April 30, 2021 on Loan 7180)—plus a per diem of $113.45 for the number of days between April 30, 2021 and the closing of the refinance or takeout transaction—in full satisfaction of Loan s 9641, 7005, and 7180. Peoples Bank shall retain its liens with the priority thereof, as it existed on the Petition Date pursuant to section 1129(b)(2)(A)(i)(I) of the Bankruptcy Code until the Allowed Class 2 Claim is satisfied as set forth herein. Within 15 days after these payments, People's Bank will release all liens and guarantors (except as otherwise provided in any refinancing agreement) and dismiss with prejudice and pending court actions related to Loan Nos. 7005, 9641 and 7180).

3.2.3       *Impairment and Voting*

Class 2 is impaired by the Plan. The holder of the Class 2 Claim is entitled to vote to accept or reject the Plan.

3.3       **Class 3: Allowed Claim of the SBA**

3.3.1       *Classification*

Class 3 consists of the Allowed Claim of the SBA.

3.3.2       *Treatment*

This Claim shall be treated as a general unsecured obligation of the Debtor in an amount up to $150,000.00 (as determined by the Bankruptcy Court upon motion or objection of the Debtor), less any payments made by the Debtor to SBA during the Chapter 11 Case. SBA's Class 3 Claim shall be treated as a Class 4 general unsecured claim for distribution purposes. SBA shall not retain any lien as it existed on the Petition Date.

3.3.3       *Impairment and Voting*

Class 3 is impaired by the Plan. The holder of the Class 3 Claim is entitled to vote to accept or reject the Plan.

3.4       **Class 4: Allowed General Unsecured Claims**

3.4.1       *Classification*

Class 4 consists of the Allowed Unsecured Claims of all holders of General Unsecured Claims.

3.4.2      *Treatment*

These Claims shall be treated as unsecured obligations of the Debtor. After the payment of allowed administrative and priority unsecured claims, each holder of an Allowed Class 4 Claim will receive a Pro Rata Share of the remaining balance of the $102,171.00 designated in the purchase price for the payment of unsecured creditors.

3.4.3      *Impairment and Voting*

Class 4 is impaired by the Plan. The holders of Class 4 Claims are entitled to vote to accept or reject the Plan to the extent permitted by applicable law.

3.5      ***Class 5: Equity Interests in the Debtor***

3.5.1      *Classification*

Class 5 consists of consists of the Equity Interests in the Debtor.

3.5.2      *Treatment*

Upon the closing of the sale of the Debtor's assets to Newco, the Equity Interests in the Debtor shall be cancelled.

3.5.3      *Impairment and Voting*

Class 5 is impaired by the Plan. The holder of the Class 5 Equity Interests is entitled to vote to accept or reject the Plan to the extent permitted by applicable law.

## ARTICLE 4
## ACCEPTANCE OR REJECTION OF THE PLAN

4.1      ***Impaired Classes Vote.***  Each holder of a Claim or Interest in an impaired Class receiving or retaining anything under this Plan is entitled to vote to accept or reject this Plan to the extent and in the manner provided in the Plan, the Bankruptcy Code and the Bankruptcy Rules, or in any voting procedures order.

4.2      ***Acceptance by Impaired Classes of Claims.***  Acceptance of this Plan by any Impaired Class entitled to vote shall be determined in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any voting procedures order entered by the Bankruptcy Court.

4.3      ***Designation of Classes Entitled to Vote.***  Classes 1-5 are impaired, and the holders of Claims and Interests in those Classes are entitled to vote on the Plan.

4.4      ***Nonconsensual Confirmation.***  With respect to any Impaired Class, including any Class of Claims or Interests created pursuant to amendments or modifications to this Plan,

that does not accept the Plan, the Debtor will request that the Bankruptcy Court confirm this Plan by Cramdown with respect to any such non-accepting Class or Classes at the Confirmation Hearing, *and the filing of this Plan shall constitute a motion for such relief*.

## ARTICLE 5
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

5.1      ***Assumption and assignment.*** Each executory contract or unexpired lease of the Debtor that has not expired by its own terms before the Effective Date, been terminated prior to the Effective Date or previously been assumed by the Debtor pursuant to an order of the Bankruptcy Court, shall be assumed by the Debtor and assigned to Newco as of the Effective Date pursuant to sections 365 and 1123 of the Bankruptcy Code, except for any executory contract or unexpired lease (i) that is listed on a "Schedule of Executory Contracts and Unexpired Leases to be Rejected" (to be Filed on or before the day that is seven (7) days prior to the Confirmation Hearing), (ii) that has been previously rejected by the Debtor pursuant to an order of the Bankruptcy Court, (iii) as to which a motion for rejection of such executory contract or unexpired lease is filed prior to the Effective Date, or (iv) added to the "Schedule of Executory Contracts and Unexpired Leases to be Rejected" prior to the Effective Date. Nothing in the Plan, any Exhibit to the Plan, or any document executed or delivered in connection with the Plan or any such Exhibit creates any obligation or liability on the part of the Debtor, the Reorganized Debtor, or any other person or entity that is not currently liable for such obligation, with respect to any executory contract or unexpired lease except as may otherwise be provided in the Plan.

Any executory contract or unexpired lease assumed pursuant to the Plan shall be and hereby is assumed by the Debtor as of the Effective Date and shall be fully enforceable by the Debtor in accordance with its terms thereof, and shall include all written modifications, amendments, supplements of said executory contract or unexpired lease and, as with respect to executory contracts or unexpired leases that relate to real property, shall include all written agreements and leases appurtenant to the premises, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easements, and any other interests in real property or rights *in rem* related to such premises. Listing a contract or lease on the "Schedule of Executory Contracts and Unexpired Leases to be Rejected" is not deemed an admission by the Debtor or Reorganized Debtor that such contract is an executory contract or unexpired lease or that the Debtor or Reorganized Debtor has any liability thereunder.

The Debtor reserves the right at any time before the Effective Date to amend the "Schedule of Executory Contracts and Unexpired Leases to be Rejected" to: (a) delete any executory contract or unexpired lease listed on the "Schedule of Executory Contracts and Unexpired Leases to be Rejected," thus providing for its assumption under the Plan, or (b) add any executory contract or unexpired lease to the "Schedule of Executory Contracts and Unexpired Leases to be Rejected," thus providing for its rejection under the Plan. The Debtor shall provide notice of any such amendment of the "Schedule of Executory Contracts and Unexpired Leases to be Rejected" to the other party or parties to the affected executory contract and/or unexpired lease, and to the Office of the Bankruptcy Administrator.

5.2     ***Cure Payments, Compensation for Pecuniary Loss, and Adequate Assurance.*** All payments, including any and all cure payments, adequate assurance or compensation for actual pecuniary loss, that are required to be paid or provided by sections 365(b)(1)(A)-(C) of the Bankruptcy Code (collectively, all cure payments, and any and all provisions for adequate assurance and/or compensation for actual pecuniary loss due or required to be paid under sections 365(b)(l)(A)-(C) of the Bankruptcy Code (the "<u>Cure Payments</u>") for any executory contract or unexpired lease that is being assumed under the Plan, unless disputed by the Debtor, shall be made by the Debtor on the Effective Date.

**The Debtor hereby gives notice that there are no Cure Payments due with respect to any executory contracts and unexpired leases to be assumed by the Debtor and assigned to Newco under the Plan. Any non-Debtor party to any executory contract or unexpired lease to be assumed under the Plan that objects to the assumption and assignment of the executory contract or unexpired lease or believes that a Cure Payment is due in connection with such assumption must file a written objection to the assumption of such executory contract or unexpired lease with no Cure Payment and state in the written objection the grounds for such objection and specifically set forth the amount of any request for a Cure Payment by the deadline established by the Bankruptcy Court for filing objections to confirmation of the Plan.**

Unless the non-debtor party to any executory contract or unexpired lease to be assumed and assigned files and serves on the Debtor and its counsel an objection to assumption of such executory contract or unexpired lease for any reason, or asserting that a Cure Payment is required or owed in connection with such assumption, by the deadline established by the Bankruptcy Court for filing objections to confirmation of the Plan, then the executory contracts and unexpired leases shall be assumed, and any default then existing in the executory contract and/or unexpired lease shall be deemed cured as of the Effective Date, and there shall be no other cure obligation or Cure Payment due or owed by anyone, including the Debtor and Newco, in connection with such assumption and assignment of the executory contract or unexpired lease unless otherwise set forth in this Plan. Any Claims for Cure Payments not Filed as part of a written objection to the proposed assumption within such time period will be forever barred from assertion against the Debtor, the Estate, Newco, and their assets, and the holders of any such Claims are barred from recovering any distributions under the Plan on account thereof unless provided otherwise in this Plan. In the event of an objection to the assumption of executory contracts or unexpired leases regarding the amount of any Cure Payment, or the ability of the applicable Reorganized Debtor to provide adequate assurance of future performance or any other matter pertaining to assumption, (a) the Bankruptcy Court will hear and determine such dispute at the Confirmation Hearing, and (b) in the discretion of the Debtor, the Debtor (i) may assume such disputed executory contract or unexpired lease and assign the same to Newco by curing any default or providing adequate assurance in the manner determined by the Bankruptcy Court, or (ii) the Debtor may reject such executory contract or unexpired lease as of the Effective Date. The Reorganized Debtor shall make any Cure Payment on the later of the Effective Date or the date such Cure Payment is due pursuant to a Final Order, <u>provided however</u> that the Reorganized Debtor shall have ten (10) Business Days after any order determining the amount of a disputed Cure Payment becomes a Final Order in which to amend the "Schedule of Executory Contracts and Unexpired Leases to be Rejected" to provide for the rejection of such executory contract or

unexpired lease and, in such an event, such executory contract or unexpired lease shall be deemed rejected as of the Effective Date.

5.3    ***Effect of Confirmation Order on Executory Contracts and Unexpired Leases.*** Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute approval of such assumptions and assignments pursuant to section 365(a) and 1123(b)(2) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption and assignment is in the best interest of the Debtor, the Estate, and all parties in interest. In addition, the Confirmation Order shall constitute a finding of fact and conclusion of law that (i) there are no defaults of the Debtor, no Cure Payments owing (including that there is no compensation due for any actual pecuniary loss), (ii) there is adequate assurance of future performance with respect to each such assumed executory contract or unexpired lease, (iii) such assumption and assignment is in the best interest of the Debtor and the Estate, (iv) upon the Effective Date, the assumed executory contracts or unexpired leases constitute legal, valid, binding and enforceable contracts in accordance with the terms thereof, and (v) the non-Debtor counter party to each assumed executory contract or unexpired lease is required to and ordered to perform under and honor the terms of the assumed executory contract or unexpired lease. All executory contracts and unexpired leases assumed and assigned under the Plan or during the Chapter 11 Case constitute valid contracts and leases, as applicable, enforceable by Newco against the non-Debtor counterparties regardless of any cross-default or change of control provisions in any contracts or leases assumed or rejected under the Plan or during the Chapter 11 Case. Subject to the occurrence of the Effective Date, the Confirmation Order shall constitute an order of the Bankruptcy Court approving the rejection as of the Effective Date of all executory contracts and unexpired leases which are not assumed and assigned under this Plan, with the rejection effective as of the day before the Petition Date, as being burdensome and not in the best interest of the estate.

5.4    ***Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan.*** Any Claims for damages arising from the rejection of an executory contract or unexpired lease under this Plan must be Filed within fourteen (14) days after the Confirmation Date or, with respect to any executory contracts or unexpired leases which are rejected after the Confirmation Date, by amendment to the "Schedule of Executory Contracts and Unexpired Leases to be Rejected," no later than fourteen (14) days after the date of such amendment to the "Schedule of Executory Contracts and Unexpired Leases to be Rejected," or such Claims will be forever barred and unenforceable against the Debtor, Reorganized Debtor, and their assets and the holders of any such Claims are barred from receiving any distributions under the Plan.

## ARTICLE 6
## DISTRIBUTIONS UNDER THE PLAN

6.1    ***Distributions Under the Plan.*** The Debtor or any distribution agent the Debtor may retain shall make all distributions to the holders of Allowed Claims and Allowed Interests that are required under this Plan. If any litigation now pending is resolved by Final Order or settlement, and the Debtor is ordered to pay any sums to the successful litigant, then such party shall become a creditor, and shall share in distributions to the appropriate Class. Whenever any

distribution to be made under this Plan shall be due on a day other than a Business Day, such distribution shall instead be made, without the accrual of any interest, on the immediately succeeding Business Day, but shall be deemed to have been made on the date due. To the extent this Plan is confirmed pursuant to section 1191(b), this Plan invokes section 1194(b) such that the Debtor, and not the Trustee, shall have the obligation to make payments to holders of Allowed Claims.

6.2     ***Delivery of Distributions.*** Distributions to a holder of an Allowed Claim or Allowed Interest shall be made at the address of such holder as indicated on the Debtor's records. In the event that any such distribution is returned as undeliverable, the Reorganized Debtor shall use reasonable efforts to determine the current address of the applicable holder, and no distribution to such holder shall be made unless and until the Debtor has determined such then current address, provided, however, that if any distribution remains unclaimed after the first anniversary after distribution, such distribution shall be deemed unclaimed property pursuant to section 347(b) of the Bankruptcy Code and shall become vested in Newco. In such event, the Claim of the holder for such distribution shall no longer be deemed to be Allowed, and such holder shall be deemed to have waived its rights to such distribution under this Plan pursuant to section 1143 of the Bankruptcy Code, shall have no further claim or right thereto, and shall not participate in any further distributions under this Plan with respect to such Claim. Checks issued by the Debtor in respect of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof.

6.3     ***Third-Party Agreements.*** Distributions to Creditors hereunder will not affect the right of any Entity to levy, garnish, attach, or employ other legal process with respect to such distributions. All subordination agreements entered into by any parties in interest shall be enforceable to the extent permitted by applicable law, and all distributions and payments made pursuant to the Plan shall be subject to applicable law.

6.4     ***Manner of Payment Under the Plan.*** At the option of the Reorganized Debtor, any payment to be made under the Plan may be made by check or wire transfer from a domestic bank or as otherwise required by applicable agreement.

6.5     ***No Fractional Distributions.*** For purposes of distributions, Cash distributions may be rounded up or down, as applicable, to the nearest whole dollar.

## ARTICLE 7
## MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN

7.1     Sources of funding: Asset Sale. The Plan contemplates that distributions to Creditors will be funded by revenues generated by the sale of all the Debtor's assets to Newco. The assets shall be sold free and clear of all liens, claims, interests, and encumbrances (with all such liens, claims, interests, and encumbrances transferring to the sales proceeds) pursuant to sections 1123(a)(5) and (b)(4) of the Bankruptcy Code. Upon the Effective Date, the Debtor shall be authorized to sell all of its assets to Newco for the consideration set forth herein pursuant to an asset purchase agreement that will include, among other things, a release by the Debtor of all claims against King. Should the required payment not be received from Newco, the holder of the

Equity Interests in the Debtor shall retain such interests in the Debtor.

7.2     ***Distributions of Available Funds.*** The Debtor anticipates that, unless agreed otherwise by the Debtor and the holder of an Allowed Administrative Claim, all Allowed Administrative Claims, all Allowed Priority Tax Claims, and all Allowed Secured Tax Claims will be paid in full upon the Effective Date from funds generated by sale of its assets. After paying all Allowed Administrative Claims, all Allowed Priority Tax Claims, and all Allowed Secured Tax Claims, the remaining proceeds from the sale of assets will be distributed to the holders of Allowed Claims in Class 4 in Pro Rata Shares in full satisfaction of their Allowed Claims (up to the full amount of their Allowed Claims as of the Petition Date).

7.3     ***Authority to Act Following Confirmation Date and Effective Date.*** Upon confirmation of this Plan, the Debtor shall be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of this Plan including, without limitation, the execution of an Asset Purchase Agreement and filing of all documents required or contemplated by this Plan. In connection with the occurrence of the Effective Date, the Debtor is authorized to execute, deliver, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

### ARTICLE 8
### RESOLUTION OF DISPUTED CLAIMS AND INTERESTS

8.1     ***Objections to Claims and Interests; Prosecution of Disputed Claims and Interests.*** The Debtor and, after the Effective Date, the Reorganized Debtor, shall have the exclusive right to object to the allowance, amount or classification of Claims and Interests asserted in the Chapter 11 Case, and such objections may be litigated to Final Order by the Debtor or Reorganized Debtor, as applicable, or compromised and settled in accordance with the business judgment of the Debtor or Reorganized Debtor, as applicable, without further order of the Bankruptcy Court. Unless otherwise provided herein or ordered by the Bankruptcy Court, all objections to Claims and Interests shall be filed no later than one year after the Effective Date, subject to any extensions granted pursuant to a further order of the Bankruptcy Court, which extensions may be obtained by the Reorganized Debtor upon *ex parte* motion.

8.2     ***Estimation of Disputed Claims and Interests.*** The Debtor and, after the Effective Date, the Reorganized Debtor, may at any time request that the Bankruptcy Court estimate for all purposes, including distributions under this Plan, any Disputed, contingent or unliquidated Claim or Interest pursuant to section 502(c) of the Bankruptcy Code whether or not the Debtor or the Reorganized Debtor have previously objected to such Claim or Interest. The Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest at any time, including, without limitation, during the pendency of an appeal relating to such objection.

8.3     ***No Distribution on Account of Disputed Claims and Interests.*** Notwithstanding anything else contained in this Plan, except with respect to any undisputed, non-contingent and liquidated portion of General Unsecured Claims, no distribution shall be due or made with respect to all or any portion of any Disputed, contingent, or unliquidated Claim

until the Claim becomes an Allowed Claim by Final Order.

## ARTICLE 9
## EFFECT OF CONFIRMATION OF PLAN

9.1    *Vesting of Assets and Retained Causes of Action.* On the Confirmation Date, pursuant to section 1141(b) of the Bankruptcy Code, all assets of the Debtor and Debtor in Possession shall vest in the Reorganized Debtor free and clear of any and all Claims, Liens, Interests, and other interests, charges and encumbrances, except as otherwise expressly provided in this Plan or in the Confirmation Order. From and after the Confirmation Date, the Reorganized Debtor may operate its business and pending the sale of its assets to Newco it may own, use, acquire and dispose of its assets free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if the Chapter 11 Case had never been filed. Except as otherwise specifically provided in this Plan, the Reorganized Debtor shall retain all rights and is authorized to commence and pursue, as it deems appropriate, any and all claims and causes of action, including, but not limited to Avoidance Actions, whether arising before or after the Petition Date, in any court or other tribunal including, without limitation, in an adversary proceeding filed in the Chapter 11 Case, and including but not limited to, the claims and causes of action specified in the Plan.

9.2    *Binding Effect.* Subject to the occurrence of the Effective Date as set forth in Article 10 of the Plan, on and after the occurrence of the Confirmation Date, the provisions of this Plan shall bind any holder of a Claim against, or an Interest in, the Debtor and such holder's successors and assigns, whether or not such holder's Claim or Interest is impaired under the Plan, whether or not such holder has accepted the Plan, and whether or not such holder is entitled to a distribution under the Plan.

9.3    *Discharge of the Debtor.* Except as otherwise provided in this Plan or the Confirmation Order, and to the fullest extent permitted by sections 1141, 1181(c), and 1192 of the Bankruptcy Code, the rights afforded in this Plan and the treatment of Claims and Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims against and Interests in the Debtor, the Debtor in Possession, the Reorganized Debtor or the assets, interests in, or property of the Debtor, the Debtor in Possession or the Reorganized Debtor of any nature whatsoever, including any Interest accrued on any Claim from and after the Petition Date. Except as expressly otherwise provided herein or in the Confirmation Order, all Claims arising before the Effective Date (including those arising under sections 502(g), 502(h) or 502(i) of the Bankruptcy Code) against the Debtor and the Debtor in Possession (including any based on acts or omissions that constituted or may have constituted ordinary or gross negligence or reckless, willful, or wanton misconduct of any of the Debtor's officers, directors, employees, or agents, or any conduct for which the Debtor may be deemed to have strict liability under any applicable law), and all Interests shall be irrevocably satisfied, discharged, cancelled and released in full.

For the avoidance of doubt, the Reorganized Debtor shall be responsible only for (a) those payments and distributions expressly provided for or due under this Plan and (b) Claims and Interests that are not canceled and discharged pursuant to specific and express provisions of

this Plan, and then only to the extent and in the manner specifically and expressly provided in this Plan. All Entities are precluded and forever barred from asserting against the Debtor, the Debtor in Possession, or the Reorganized Debtor, or the assets, properties, or Interests in or property of the Debtor, the Debtor in Possession, or the Reorganized Debtor of any nature whatsoever, any Claims or Interests based upon any act or omission, transaction, or other activity, event, or occurrence of any kind or nature that occurred prior to the Effective Date, whether or not the facts of or legal bases there for were known or existed prior to the Effective Date, except for (a) those payments and distributions expressly due under this Plan and (b) Claims and Interests, if any, that are not canceled and discharged under the Plan, but instead survive pursuant to specific and express provisions of this Plan.

Except as expressly provided in this Plan, nothing herein shall be construed to affect the liability of any other person or entity for a debt that is discharged as to the Debtor, the Debtor in Possession, and/or the Reorganized Debtor.

9.4    *Indemnification Obligations.* Subject to the occurrence of the Effective Date as set forth in Article 10 of this Plan, the obligations of either the Debtor to indemnify, reimburse or limit liability of any person who is serving or has served as one of its directors, officers, employees or agents by reason of such person's prior or current service in such capacity as provided in the applicable articles of organization, operating agreements, partnership agreements, or bylaws, by statutory law or by written agreement, policies or procedures of or with the applicable company, shall be deemed to be and treated as executory contracts that are assumed by the Debtor and assigned to the Reorganized Debtor pursuant to the Plan and section 365 of the Bankruptcy Code and shall not be affected by or discharged by this Plan. Nothing in the Plan shall be deemed to affect any rights of any director or officer or any other person against any insurer with respect to any directors or officers' liability insurance policies.

9.5    *Term of Certain Injunctions.* Unless otherwise provided herein or in the Confirmation Order, all injunctions and/or stays provided for in, or in connection with, this Chapter 11 Case, whether pursuant to the provisions of the Bankruptcy Code or other applicable law, in existence on the Confirmation Date, shall remain in full force and effect through the Effective Date and thereafter if so provided by this Plan, the Confirmation Order, or by their own terms; *provided that* any holder of an Allowed Secured Claim whose collateral is surrendered to it pursuant to the terms of this Plan, or, any holder of an Allowed Secured Claim whose collateral is retained by the Reorganized Debtor pursuant to the terms of this Plan but with respect to which there is a post-confirmation default by the Reorganized Debtor in its obligations hereunder, shall not be enjoined nor prohibited from exercising its *in rem* rights as to such collateral under applicable state law following occurrence of the Effective Date upon thirty-days' written notice to the Reorganized Debtor of its intent to do so. In addition, on and after the Confirmation Date, the Debtor may seek such further orders as it deems necessary or appropriate to preserve the *status quo* during the time between the Confirmation Date and the Effective Date.

9.6    *No Successor Liability.* Except as otherwise stated in the Plan or Confirmation Order, neither the Debtor, Newco, nor the Reorganized Debtor will have any responsibilities for any liabilities or obligations of the Debtor or any of the Debtor's past or present subsidiaries relating to or arising out of the operations of or assets of the Debtor or any of

the Debtor's past or present subsidiaries, whether arising prior to, or resulting from actions, events, or circumstances occurring or existing at any time prior to the Effective Date. Neither Newco nor the Reorganized Debtor shall have any successor or transferee liability of any kind or character, for any Claims; provided, however, that the Reorganized Debtor shall have the obligations for the payments specifically and expressly provided, and solely in the manner stated, in this Plan.

9.7    *Preservation of Claims Not Settled or Released.*  Without limiting any other provisions of this Plan, unless a Claim or cause of action against a Creditor or other Entity is expressly and specifically waived, released, compromised or settled in this Plan or any Final Order, the Reorganized Debtor reserves the same for pursuit by the Reorganized Debtor after the Effective Date.  No preclusion doctrine, including, without limitation, res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or causes of action upon or after the Confirmation Date or the Effective Date of the Plan.  The Reorganized Debtor reserves the right to pursue or adopt any claims (and any defenses), causes of action, or objections of the Debtor or Debtor in Possession as trustee for or on behalf of its Creditors, not specifically waived, released, compromised or settled in this Plan or any Final Order against any Entity, including, without limitation, the plaintiffs or codefendants in any lawsuits. The Reorganized Debtor shall be a representative of the Estate appointed for the purposes of pursuing any and all such claims and Causes of Action under 11 U.S.C. § 1123(b)(3)(B).

Any Entity to whom the Debtor has incurred an obligation (on account of services, purchase or sale of goods, tort, breach of contract or otherwise), or who has received services or otherwise transacted business with the Debtor in any capacity should assume that such obligation, transfer, or other transaction may be reviewed by the Reorganized Debtor subsequent to the Effective Date and may, to the extent not theretofore specifically waived, relinquished, released, compromised or settled in this Plan or any Final Order, be the subject of an action, claim, demand, or objection after the Effective Date, whether or not (a) such Entity has filed a proof of claim against the Debtor in the Chapter 11 Case, (b) such Entity's proof of claim has been objected to, (c) such Entity's Claim was included in the Debtor's Schedules, or (d) such Entity's scheduled Claim has been objected to by the Debtor or has been identified by the Debtor as disputed, contingent, or unliquidated.

## ARTICLE 10
## THE EFFECTIVE DATE OF THE PLAN

10.1    *Conditions to Occurrence of Effective Date of Plan.* The "effective date of the plan," as used in Section 1129 of the Bankruptcy Code, shall not occur until the Effective Date as defined herein. The Effective Date shall occur upon satisfaction of the following conditions precedent (or conditions subsequent with respect to actions that are to be taken contemporaneously with, or immediately upon, the occurrence of the Effective Date) on or before June 30, 2021:

10.1.1 The Confirmation Order shall have been entered by the Bankruptcy Court.

10.1.2 All actions, agreements and instruments, or other documents necessary to implement the terms and provisions of the Plan, if any, shall have been executed and delivered by any applicable non-debtor parties in form and substance satisfactory to the Debtor.

10.1.3 All fees and expenses due to or incurred by Professionals for the Debtor through the Effective Date not previously paid pursuant to interim or Final Orders shall have been paid into and shall be held in trust, free and clear of Liens, Claims and encumbrances (other than the rights of such Professionals) until due and payable in accordance with applicable court order.

10.2    ***Revocation of Confirmation Order or Withdrawal of Plan.*** The Debtor may revoke or withdraw the Plan prior to the Confirmation Date by filing a Notice of Withdrawal of Plan in the record of the Chapter 11 Case. If the Plan is withdrawn prior to the Confirmation Date or if the Effective Date does not occur as set forth in Article 10, then the Plan shall be deemed withdrawn and the Confirmation Order (if any has been entered) shall be automatically revoked without the need for any action by any party in interest or the Bankruptcy Court. In such event, the Plan and the Confirmation Order shall be of no further force or effect and, the Debtor and all holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the filing of the Plan, and (ii) all the Debtor's respective obligations with respect to the Claims and Interests shall remain unchanged, all of the Debtor's rights and claims against all Entities shall be fully preserved and nothing contained herein shall be deemed to constitute an admission or statement against interest or to constitute a waiver or release of any claims by or against the Debtor or any other persons or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor or any other persons.

## ARTICLE 11
## MISCELLANEOUS PROVISIONS

11.1 ***Notice.*** Any notice required or permitted to be provided to the Debtor under the Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) reputable overnight courier service, freight prepaid, to be addressed as follows:

James H. Henderson
2030 South Tryon St., STE 3H
Charlotte, North Carolina 28203

11.2 ***Headings.*** The headings used in this Plan are inserted for convenience only and do not in any manner affect the construction of the provisions of this Plan.

11.3 ***Governing Law***. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of North Carolina, without giving effect to any conflicts of law principles thereof that would result in the application of the laws of any other jurisdiction, shall govern the construction of this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise expressly provided in such instruments, agreements, or documents.

11.4 ***Additional Documents.*** The Debtor has the authority to take any and all actions and execute (and perform) any agreements and documents as the Debtor deems necessary or appropriate in their reasonable discretion to effectuate and further evidence the terms and conditions of this Plan.

11.5 ***Compliance with Tax Requirements.*** In connection with this Plan, the Debtor will comply with all applicable withholding and reporting requirements imposed by federal, state, and local taxing authorities, and all distributions hereunder shall be subject to such withholding and reporting requirements.

11.6 ***Exemption from Transfer Taxes.*** Pursuant to section 1146(a) of the Bankruptcy Code, to the extent applicable, the issuance, transfer, or exchange of any securities under this Plan, the making or delivery of any mortgage, deed of trust, other security interest, or other instrument of transfer under, in furtherance of, or in connection with this Plan, shall be exempt from all taxes as provided in such section of the Bankruptcy Code.

11.7 ***Further Authorizations.*** The Debtor may seek such orders, judgments, injunctions, and rulings it deemsnecessary or useful to carry out the intention and purpose of, and to give full effect to, the provisions of this Plan.

11.8 ***Successors and Assigns.*** The rights, benefits and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, personal representative, successor or assign of such Entity.

11.9 ***Successors and Assigns.*** The rights, benefits and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, personal representative, successor or assign of such Person.

11.10 ***Modification and Amendment of the Plan.*** Subject to the restrictions in section 1127 of the Bankruptcy Code and Bankruptcy Rules 2002 and 3019, this Plan may be amended or modified by the Debtor.

11.11 ***Termination of Trustee.*** The Trustee shall be terminated upon the Reorganized Debtor's confirmation that the Plan has been substantially consummated by filing a notice of substantial consummation on the docket in the Bankruptcy Case.

11.12 ***Remedies.*** Upon default by the Debtor of any of its obligations under this Plan, and upon Debtor's failure to cure such default within 30 days from the date written notice of default is mailed to the Debtor's last known address, an affected holder of an Allowed Claim may, as its exclusive remedy for such default: (a) pursue its *in rem* rights under state law including, without limitation, repossession and sale of its collateral; and/or (b) bring an action in a court of competent jurisdiction to enforce the Plan.

**ARTICLE 12**
**<u>RETENTION OF JURISDICTION</u>**

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and have jurisdiction to the fullest extent provided by applicable law over any matter arising under the Bankruptcy Code or arising in or related to the Chapter 11 Case or this Plan, including, without limitation, the following:

12.1   ***Executory Contracts and Unexpired Leases.*** To hear and determine any and all motions or applications (i) for the assumption, assumption and assignment or rejection of executory contracts or unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable, (ii) to review and determine all Cure Payments under any such assumed executory contract or unexpired lease, and (iii) to review and determine any Claims resulting from the rejection of any executory contract or unexpired lease.

12.2   ***Causes of Action.*** To determine any and all Causes of Action, including all adversary proceedings, applications, motions, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to this Plan, may be instituted by the Reorganized Debtor after the Effective Date.

12.3   ***Disputed Claims, Contingent Claims and Unliquidated Claims Allowance/Disallowance.*** To hear and determine any objections to the allowance of Claims or Interests (other than Claims that are Allowed pursuant to the Plan or by prior, Final Order of the Bankruptcy Court), including but not limited to any objections to the classification of any Claim, and to allow or disallow any contingent Claim, Disputed Claim, unliquidated Claim, contingent Interest, disputed Interest in whole or in part, and to determine any and all disputes among Creditors and holders of Interests with respect to their Claims and Interests.

12.4   ***Enforcement/Modification of Plan.***

12.4.1 To hear and determine any requests to modify this Plan, remedy any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order.

12.4.2 To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with this Plan or any other Plan documents or their interpretation, implementation, enforcement, or consummation.

12.4.3 To hear and determine other matters that may be set forth in the Plan and Confirmation Order or that relate to any transaction required or contemplated by the Plan.

12.4.4 To hear and determine any other matters related hereto, including matters related to the implementation and enforcement of the Plan, the Confirmation Order, and all orders entered by the Bankruptcy Court in the Chapter 11 Case.

12.4.5 To hear and determine any issue relating to distributions under the Plan.

12.4.6 To enter such orders as are necessary to implement and enforce the injunctions described herein, including orders extending the protections afforded under section 105 of the

Bankruptcy Code.

   12.4.7 To issue such orders in aid of execution of this Plan to the fullest extent authorized or contemplated by section 1142 of the Bankruptcy Code.

   12.5   ***Compensation of Professionals.*** To hear and determine all applications for allowance of compensation and reimbursement of expenses of Professionals, any other fees and expenses authorized to be paid or reimbursed under this Plan (whether pursuant to order of the Court, agreement, or otherwise), and to approve the reasonableness of any payments made or to be made as provided in section 1129(a)(4) of the Bankruptcy Code. To the extent not fully paid on the Effective Date, the Reorganized Debtor (and/or its assigns) is permitted and authorized to reimburse Professionals in installments.

   12.6   ***Settlements.*** To the extent that Bankruptcy Court approval is required, to consider and act on any compromise and settlement of any Claim against or Cause of Action by the Debtor or the Reorganized Debtor.

   12.7   ***Taxes.*** To hear and determine matters concerning state, local, and federal taxes, fines, penalties, or additions to taxes for which the Debtor or Debtor in Possession may be liable, directly or indirectly.

   12.8   ***Specific Purposes.*** To hear and determine such other matters as may be provided for in the Confirmation Order or may be appropriate under applicable law.

   12.9   ***Final Decree.*** To enter an order or final decree closing the Chapter 11 Case.

Dated: Charlotte, North Carolina
         April 30, 2021                         Respectfully submitted,

                                                **CUSTOM DESIGN GROUP, LLC**


                                    By:         */s/ Dewyone King*
                                                Dewyone King, Member

                                                **THE HENDERSON LAW FIRM, PLLC**


                                                /s/ James H. Henderson
                                                James H. Henderson (Bar No. 13536)
                                                2030 South Tryon St., STE 3H
                                                Charlotte, North Carolina 28203
                                                Telephone 704.333.3444
                                                *Counsel for the Debtor*

EXHIBIT A

Appendix:  Hypothetical Liquidation Analysis
(Based on Values as of 4/27/2021)

|  | Gross | % Realizable | Amount Realizable |
|---|---|---|---|
| Net Cash/Cash Equivalents | $18,000.00 | 100.00% | $18,000.00 |
| Net Accounts Receivable | $384,169.82 | 50.00% | $192,084.91 |
| Fixed Assets (Book Value) | | | |
| Machinery | $9,535.00 | 50.00% | $4,767.50 |
| Office Furniture & Equipment | $6,845.00 | 50.00% | $3,422.50 |
| Inventory | $250,000.00 | 50.00% | $125,000.00 |
| **Total Realizable Assets** | | | **$343,274.91** |
| Less:  Secured Portion of Secured Debt*** | | | ($268,204.44) |
| **Net Assets** | | | $75,070.47 |
| Less Liquidation Costs | | | |
| Statutory Trustee Commission (11 U.S.C. 326(a)) | | | ($20,413.75) |
| Brokerage Fees | | | $0.00 |
| Less:  Chapter 7 Administrative Fees | | | ($5,000.00) |
| Less:  Chapter 11 Administrative Fees | | | |
| Moon Wright & Houston, PLLC | | | ($38,373.14) |
| The Henderson Law Firm | | | ($10,000.00) |
| Micheal Bowers, Subchapter V Trustee | | | ($7,500.00) |
| **Net Available for Priority Unsecured Creditors** | | | ($6,216.42) |
| Less:  Priority Unsecured Claims | | | ($246.00) |
| **Net Available for Unsecured Creditors in Chapter 7** | | | **($6,462.42)** |
| **Available for Distribution to Unsecureds Under Plan** | | | **$102,171.00** |

***Peoples Bank contends that 100% of the Debtor's
assets are subject to Peoples Bank's security interest.

In addition, junior interests in favor of Bluevine Capital Inc.
and the SBA purportedly cover all assets not encumbered
by Peoples Bank's superior security interest.

Notwithstanding, this liquidation analysis assumes that 100%
of A/R and cash is subject to the Peoples Bank security interest,
$58,119.53 of the Fixed Assets is subject to the Peoples Bank
security interest, and no other assets are subject to any liens.

**CDG FINANCIAL PROJECTION 2021**

**INCOME**

| | | |
|---|---|---|
| 400 Sales - TEAM | $ | 153,800.00 |
| Total 400A Services- TEAM | $ | 18,000.00 |
| 401A Sales of Product Income | $ | 3,100.00 |
| 401 Sales - Store | $ | 7,000.00 |
| 402 Sales - OMG | $ | 35,000.00 |
| 403 Sales - Online | $ | 2,700.00 |
| 405 Special Events | $ | 1,500.00 |
| 406 Manufacturing | $ | - |
| 409 Discounts given | $ | (500.00) |
| 410 Refunds Given | $ | (200.00) |
| Shipping Income | | |
| **Total Income** | **$** | **220,400.00** |

**COSTS OF GOODS**

| | | |
|---|---|---|
| 506 Cost of Goods Sold | $ | 105,952.00 |
| 506A Digitizing | $ | 350.00 |
| **Total Cost of Goods Sold** | **$** | **106,302.00** |
| **GROSS PROFIT** | **$** | **114,098.00** |

**EXPENSES**

| | | |
|---|---|---|
| 550 Payroll Expenses | | |
| 550C Employee Compensation | $ | 43,544.00 |
| 550H Employee Health Insurance | $ | 3,000.00 |
| 550S Service Fees | $ | 1,500.00 |
| 550T Payroll Taxes | $ | 4,350.00 |
| 550W Worker's Comp Insurance | $ | 377.00 |
| 552 Contract Labor | $ | 22,628.00 |
| 557 Software | $ | 1,450.00 |
| 570 Commissions | $ | 150.00 |
| 605 Supplies for Shop | $ | 1,200.00 |
| 609 Repairs & Maint - Building | $ | 100.00 |
| 610 Repairs & Maint - Equipment | $ | 600.00 |
| 612 OMG School Fundraising | $ | 1,400.00 |
| 614 Equipment Rental | $ | 300.00 |
| 615 Rent of Building | $ | 6,450.00 |
| 616 Utilities | $ | 1,480.00 |
| 620 Insurance | $ | 150.00 |
| 626 Taxes & Licenses | $ | 525.00 |
| 633 Truck and Auto expenses/ fuel | $ | 350.00 |
| 709 Kitchen Supplies | $ | 50.00 |
| 710 Office supplies | $ | 450.00 |
| 711 Postage & Shipping | $ | 4,500.00 |
| 712 Cleaning paper supplies | $ | 30.00 |
| 715 Telephone | $ | 250.00 |
| 716 Travel | $ | 100.00 |

| | | |
|---|---|---:|
| 717 Meals & Entertainment | $ | 140.00 |
| 718 Mileage reimbursement | $ | 1,000.00 |
| 720 Legal & Professional Services | $ | 500.00 |
| 734 Advertising | $ | 2,650.00 |
| 742 Dues & Subscriptions | $ | 50.00 |
| 744 Bank Charges & Fees | $ | 3,850.00 |
| 744A OMG Fees | $ | 2,121.00 |
| Refunds | | |
| **Total Expenses** | **$** | **105,245.00** |
| | | |
| **NET OPERATING INCOME** | **$** | **8,853.00** |
| Interest Expense Deduction | $ | - |
| Federal & State Taxes  16.2% | $ | 1,434.18 |
| After Tax Income | $ | 7,418.82 |
| Secured Claims Payments | $ | 5,715.97 |
| **Projected Disposable Income** | **$** | **1,702.85** |