## IN THE UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## SHELBY DIVISION

| | |
|---|---|
| In re:<br><br>CUSTOM DESIGN GROUP, LLC<br><br>Debtor. | Chapter 11<br><br>Case No.: 20-50463 |

## OBJECTION TO PLAN CONFIRMATION

Teresa King ("Claimant"), by and through undersigned counsel, hereby objects to the First Amended Plan of Reorganization [Docket No. 83] (the "Plan") filed by Custom Design Group, LLC (the "Debtor"). In support of this objection, Claimant respectfully states as follows:

### BACKGROUND

1. As of March 6, 2019, Claimant invested the sum of $550,000 in the Debtor based on representations that the Debtor would merge with its affiliate CDG-Paw, LLC ("Paw") and that Claimant would receive a one-third economic interest in the merged entity. Claimant was provided, and executed, a First Amended Operating Agreement of CDG-Paw, LLC which provided Claimant with a one-third economic interest in Paw. It was Claimant's belief that the operating agreement governed the affairs of the newly merged entity. The other two members of Paw were Richard Stober and Dewyone "Pedie" King ("Pedie King").

2. The Debtor filed its voluntary petition for relief under subchapter V of Chapter 11 on December 11, 2020 (the "Petition Date"). At that time, Claimant was informed for the first time that the members of the Debtor (Richard Stober and Pedie King) never consummated the merger of the Debtor and Paw. Thus, it appears that the funds that Claimant invested in the

Debtor were used for the Debtor's benefit rather than for the benefit of a merged entity (or for the benefit of the entity in which Claimant had an interest). Both members of the Debtor received distributions or other payments from the Debtor. Further, the Debtor and Paw were managed in a manner detrimental to Paw, as evidenced by the fact that Paw was forced to file a proof of claim in this bankruptcy case for more than $460,000.

3. Based on this conduct, Claimant filed a proof of claim based on the funds invested in the Debtor. Claimant also believes that claims exist directly against one or both of the members for, among other things, breach of contract and breach of fiduciary duty.

4. After the Petition Date, Pedie King purportedly acquired all of Richard Stober's membership interests in the Debtor and Paw. Pedie King is now the proponent of the Plan which would allow Pedie King to retain sole control of the Debtor's assets for a payment of only approximately $100,000.

**OBJECTION**

5. Although the Plan states that Newco (an entity 100% owned by Pedie King) will pay the Debtor the amount of $912,089.59 to acquire the Debtor's assets, the overwhelming majority of that amount ($809,918.59) will not come from Newco. Instead, the People's Bank claims in the amount of $809,918.59 will be satisfied from the refinancing of loans made to CDG-Paw.[1] Thus, the actual amount that Newco is paying is only approximately $100,000.

6. There is no basis to conclude that providing only $100,000 to pay the claims of creditors is fair and equitable. Section 1191(c)(2) provides that in order for a plan to be fair and equitable it must provide for payment of all projected disposable income over a period of 3 to 5 years. 11 U.S.C. § 1191(c)(2)(A). Alternatively, a plan may provide for payment of a value that

---

[1] Amended Plan, p. 9 § 3.2.2.

2

is at least equal to the amount projected disposable income for that time period. 11 U.S.C. § 1191(c)(2)(B). Further, section 1190(1)(C) requires that a plan include financial projections for the relevant time period.

7. Here, the Plan does not contain projections for the 3 to 5-year period required by Section 1191. The projections attached to the Plan as Exhibit B contain only a budget for a one-month period in 2021. There are no annual projections, and there are no projections for any period after 2021.

8. The projection of monthly disposable income attached to the Plan is also substantially less than the projections attached to the original plan of reorganization filed by the Debtor before Pedie King acquired control. *See* Docket No. 57, at pp. 27-29 (the "Prior Projections"). According to the Prior Projections, the reorganized Debtor would have monthly projected disposable income of $2,960.42 which would lead to a total amount of $177,625.00 available for distribution to unsecured creditors. In contrast, the current Plan proposes paying unsecured creditors only $102,171.00. *See* Exhibit A to Plan.

9. Moreover, the projections attached to the current Plan include monthly secured claims payments of $5,715.97. However, because the secured claims of Peoples Bank are to be satisfied from the refinancing of loans by CDG-Paw, *the Debtor will not be making any secured claims payments in the future*. Thus, there is no reason for the Debtor to include secured claims payments in its projections. By including secured claims payments in the projections, the Debtor artificially deflates its projected disposable income. By failing to include reasonable projections, the Debtor has failed to comply with § 1190(1)(C), and confirmation should, therefore, be denied.

10. In addition, if the Debtor's projected secured claims payments are added back to projected disposable income, the amount of monthly projected disposable income would increase from $1,702.85 to $7,418.82. That amount of monthly disposable income would provide a total projected disposable income of $445,129.20 for payment to creditors over a five-year period. However, the Debtor proposes to pay unsecured creditors less than 25% of that amount.

11. Thus, under the Plan, the Debtor's sole member proposes to "purchase" the Debtor's assets without conducting any marketing process to determine the Debtor's true value and by contributing only a fraction of the projected disposable income that the Debtor will receive over the next five years. That is not fair or equitable.

12. Finally, in the event a plan is confirmed, any confirmation order should clarify that no claims that may be asserted against the members of the Debtor are released or impaired under the plan. Section 9.3 of the Plan appears to contemplate a discharge for any claims "based on acts or omissions that constituted ordinary or gross negligence or reckless, willful or wanton misconduct of any of the Debtor's officers, directors, employees or agents." Further, Section 7.1 of the Plan expressly contemplates that the Debtor will release any claims that it has against Pedie King. In this case, however, because the Debtor is liquidating it is not entitled to a discharge at all under section 1141(d)(3), and, in any event, a discharge of the Debtor would not result in a discharge or release of claims that any other party, including Claimant, can assert against Pedie King.

**WHEREFORE,** for the reasons stated herein, Claimant respectfully requests that confirmation of the Plan be denied and for such other and further relief as the Court may deem just and proper.

Dated: June 1, 2021

                          Respectfully submitted,

                          ALEXANDER RICKS PLLC

                          /s/ Felton E. Parrish
                          Felton E. Parrish
                          NC State Bar No. 25448
                          felton.parrish@alexanderricks.com
                          Charlotte, NC 28204
                          Tel: (980) 365-3656
                          Fax: (704) 365-3676

                          *Counsel for Teresa King*